Filed 11/19/21  P. v. Finch CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B307002 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA460458) |
| v. | |
| ROBERT FINCH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Andrea Keith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Robert Finch appeals from his judgment of conviction of three counts of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)). On appeal, Finch contends the evidence was insufficient to support a finding that he had knowledge of two firearms that were found inside his vehicle. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Evidence at Trial

On August 23, 2017, the Los Angeles County Sheriff's Department executed a search warrant on Finch's residence. The premises consisted of a two-bedroom home with a backyard and garage. Finch and his girlfriend, Shatioishia Van, resided in the home. At the time of the search, Finch was a convicted felon.

A 1984 Oldsmobile that was registered under Finch's name and home address was parked in the backyard. The vehicle was unlocked and appeared to have been parked in the same spot for a long time. Officers found a loaded .38-caliber Smith and Wesson revolver and a loaded .45-caliber Para semiautomatic handgun underneath the driver's seat of the Oldsmobile. In the unlocked garage located in the backyard, officers found a .22-caliber Marlin rifle, a .22-caliber Winchester rifle, and a metal filing cabinet containing a holster and numerous .45-caliber rounds of ammunition. All four firearms were operable and in good condition.

The common areas inside the home included a dining room with an armoire and a computer. Inside the armoire, officers recovered numerous rounds of ammunition compatible with the

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

2

two rifles found in the garage. The computer contained photographs of firearms, including a photograph of the two handguns found in the Oldsmobile.

One bedroom inside the home contained men's clothing, along with paperwork bearing Finch's name and address. No firearms or ammunition were found in this bedroom. The other bedroom contained women's clothing and was occupied by Finch's girlfriend, Van. Officers found a small .38-caliber revolver in this bedroom. While Van admitted to the police that the revolver belonged to her, she denied knowledge of any other firearms recovered from the residence. None of the ammunition found at the residence was compatible with the firearm found in Van's bedroom.

Van was charged with one count of possession of a firearm by a felon in connection with the .38-caliber revolver seized from her bedroom. She later pleaded guilty to that charge. As part of the factual basis for her plea, Van stated that she possessed the revolver that was found in her bedroom, and that she had no knowledge of any other firearms in the residence or the garage.

The officer in charge of the investigation opined that, based on the paperwork and other items found during the search, the only occupants of the residence were Finch and Van. The officer did not see any indication that anyone was living in the Oldsmobile or the garage.

## II.    The Verdict and Sentencing

Finch was charged with possession of a firearm by a felon in connection with the .45-caliber semiautomatic handgun seized from the Oldsmobile (count 1), the .38-caliber revolver seized from the Oldsmobile (count 2), and one of the .22-caliber rifles seized from the garage (count 3). At the conclusion of the trial,

3

the jury found Finch guilty as charged on all three counts. The trial court sentenced Finch to a total term of four years in state prison.

Finch filed a timely appeal.

## DISCUSSION

On appeal, Finch challenges the sufficiency of the evidence supporting his convictions in counts 1 and 2 for possession of a firearm by a felon. He specifically contends the evidence was insufficient to support a finding that he had knowledge of the two firearms that were found inside the Oldsmobile.

## I. Standard of Review

" ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.) Our "task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ' " 'be reasonably reconciled with the defendant's innocence.' " ' [Citations.] The relevant inquiry is whether, in light of all

4

the evidence, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Gomez* (2018) 6 Cal.5th 243, 278.) " 'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 324.)

## II. Substantial Evidence Supported Finch's Convictions in Counts 1 and 2

Section 29800, subdivision (a)(1) provides that "[a]ny person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." The offense "has three elements: (1) the defendant possessed a firearm, (2) the defendant knew that he possessed the firearm, and (3) the defendant had previously been convicted of a felony." (*People v. Clark* (2021) 62 Cal.App.5th 939, 958.)

"To 'possess' a firearm means 'having " ' "actual control, care and management of" ' " ' the firearm." (*In re Charles G.* (2017) 14 Cal.App.5th 945, 951.) "Possession may be actual or constructive. ' "A defendant has actual possession when the weapon is in his [or her] immediate possession or control," ' i.e., when he or she is actually holding or touching it. [Citations.] 'To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 132.) Possession of a weapon "does not require that a person be armed or that the weapon be within a person's immediate vicinity. [Citations.] Rather, it encompasses having a weapon in one's bedroom or home or another location under his or her control, even when the

individual is not present at the location." (*In re Charles G.*, at p. 951.) Possession "may be proven circumstantially, and possession for even a limited time and purpose may be sufficient." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831.)

Viewing the evidence in the light most favorable to the judgment, we conclude the evidence was sufficient to support Finch's convictions for possession of a firearm by a felon in counts 1 and 2. Based on the totality of the evidence presented, the jury reasonably could conclude that Finch had possession of the two handguns that were found inside the Oldsmobile because he knowingly exercised a right to control each of those firearms.

Generally, an " 'inference of dominion and control is easily made when the contraband is discovered in a place over which the defendant has general dominion and control: his residence [citation], his automobile [citation], or his personal effects.' " (*People v. Busch* (2010) 187 Cal.App.4th 150, 162.) Here, the jury easily could infer that Finch had dominion and control over both the vehicle where the handguns were found and the backyard of the residence where the vehicle was kept. The evidence at trial established that Finch was the registered owner of the Oldsmobile, and he resided on the premises where the Oldsmobile had been parked for an extended period. The officer in charge of the investigation testified that there was no indication that anyone other than Finch and his girlfriend, Van, was residing on the property at the time of the search. While Van admitted to possessing a small .38-caliber revolver that was found in her bedroom, she denied any knowledge of any other firearms that were found on the premises.

Other circumstances further supported an inference that Finch knew of the presence of the firearms in his Oldsmobile.

The garage in the backyard contained numerous rounds of ammunition that were compatible with one of the firearms, the .45-caliber semiautomatic handgun. Two .22-caliber rifles were also kept in the garage in plain sight, and ammunition compatible with those rifles was kept in a common area of the residence. Moreover, a computer in the common area contained a photograph of the same handguns that were found inside the Oldsmobile. The fact that Finch shared the residence with Van, and that they both had access to the firearms and ammunition stored throughout the property, did not preclude the jury from inferring that Finch knowingly possessed the two firearms that were found inside his vehicle. (See, e.g., *People v. Elder* (2014) 227 Cal.App.4th 1308, 1317 [possession of firearms seized from home defendant shared with girlfriend where police found one gun on entertainment center shelf, another gun in unlocked safe in bedroom, and photograph of defendant holding gun identical to one on shelf]; *People v. Cordova* (1979) 97 Cal.App.3d 665, 668, 670 [possession of rifle found in locked trunk of defendant's father's car where evidence showed car was driven by defendant and other family members and ammunition compatible with rifle was found in residence defendant shared with wife]; *People v. Nieto* (1966) 247 Cal.App.2d 364, 366–368 [possession of guns found in car defendant owned and was driving even though passenger had equal access and claimed guns belonged to him].)

In arguing that the evidence was insufficient to prove that he had knowledge of the firearms inside his Oldsmobile, Finch primarily relies on the decision in *People v. Antista* (1954) 129 Cal.App.2d 47. Contrary to Finch's argument, however, that case does not support the reversal of his convictions. In *Antista*, at page 48, during a search of the defendant's apartment, the

7

police found marijuana in a cupboard in the living room and in a radio in an unused bedroom or storeroom. Although the defendant was away from his apartment at the time of the search, two other individuals were present, including a female friend who was a known user of narcotics and a frequent guest. (*Id*. at pp. 48, 52.) The defendant also would leave a key under a mat outside his door for the use of his friends who often came to the apartment to watch television while he was away. (*Id*. at p. 48.) In reversing the defendant's conviction for possession of the marijuana found in his apartment, the Court of Appeal held that "if it is established that one accused of possession returned to his apartment, . . . and found it occupied by a user of narcotics, and a narcotic was found in it, and if there is no evidence that it was there before that time, the fact of its presence, without any other fact or circumstance of an incriminating nature, is legally insufficient to prove a charge of possession." (*Id*. at p. 53.)

In contrast to *Antista*, this case includes other facts or circumstances that reasonably could support a finding that Finch had knowledge of the two firearms inside his vehicle. As discussed, ammunition compatible with the semiautomatic handgun was found in Finch's garage and a photograph of both firearms was found on a computer in Finch's residence. There was no evidence that anyone other than Finch and Van lived on the property or otherwise had access to the firearms and rounds of ammunition that were discovered at various locations on the premises. Furthermore, in both her statement to the police and her open plea in court, Van expressly denied knowledge of any firearms that were recovered from the residence except for the one revolver that was found inside her bedroom.

The other cases on which Finch relies are also readily distinguishable. In each of those cases, the defendant's access to the premises where the contraband was found was insufficient to support a finding of possession because there was no other evidence from which it could reasonably be inferred that the defendant had dominion and control over the contraband. (See *People v. Hancock* (1957) 156 Cal.App.2d 305, 310 [defendant's status as drug user and presence in codefendant's motel room from which heroin was thrown was "not sufficient to prove that he had any dominion or control over it"]; *People v. Tabizon* (1958) 166 Cal.App.2d 271, 273 [defendant's presence in motel room where drugs were found was insufficient to show possession because he "was not a tenant of motel room but was at most a transient visitor"]; *People v. Stanford* (1959) 176 Cal.App.2d 388, 391 [defendant's presence in home did not justify finding that he possessed narcotics found in bathroom because "he did not live there and therefore he did not have possession or control of the premises"]; *People v. Fernandez* (1959) 172 Cal.App.2d 747, 755 [where narcotic was found in suit in dry cleaning shop during time when defendant-owner had left shop in another's care, his "ownership of the shop is not sufficient to justify an inference that he knew the narcotic was in the suit"]; *People v. Van Syoc* (1969) 269 Cal.App.2d 370, 373 [defendant's "mere ownership of an unlocked car parked in a public area in which marijuana is found and to which [he] has non-exclusive access" did not support his conviction for marijuana possession]; *In re I.A.* (2020) 48 Cal.App.5th 767, 779 [where defendant once touched gun that was later used in drive-by shooting but was not present in car from which gun was fired, evidence failed to establish that defendant "exercised dominion and control over the gun"].)

In this case, however, there was substantial evidence connecting Finch to the firearms inside the Oldsmobile beyond his ownership of the vehicle. Finch also had dominion and control over the backyard where the Oldsmobile was parked, the garage where ammunition compatible with one of the firearms was kept, and the common areas of the home where a photograph of the two firearms was stored on a computer. While Finch's control over the premises was not exclusive to him given that he shared the residence with his girlfriend, no one other than Finch and Van was shown to have access to the various firearms and ammunition stored on their private property, and Van denied any knowledge of the guns in Finch's vehicle. On this record, the jury reasonably could conclude that Finch knowingly exercised dominion and control over the two firearms that were found inside his Oldsmobile. Accordingly, Finch's convictions in counts 1 and 2 were supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.

WINDHAM, J.*

We concur:

EDMON, P. J.          EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10