*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1845**

State of Minnesota,
Respondent,

vs.

Jonathan Andrew Bursch,
Appellant.

**Filed August 24, 2015
Affirmed in part and reversed in part
Bjorkman, Judge**

Polk County District Court
File No. 60-CR-13-1878

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his convictions of possession of a firearm by a prohibited person and receiving stolen property, arguing that (1) the evidence was insufficient to

prove constructive possession of either a firearm or stolen property, (2) the district court erred in instructing the jury on constructive possession, (3) the prosecutor elicited overly prejudicial testimony, (4) the district court improperly sentenced him on all three convictions, and (5) the district court erroneously directed appellant to pay witness travel expenses as prosecution costs. We affirm in part and reverse in part.

## FACTS

On September 17, 2013, police officers conducted a probation search at a home in Crookston. Appellant Jonathan Bursch had been living there with his brother and a roommate, Jacob Syverson, since June 2013. Officers found a shotgun and a gun case containing a rifle in an upstairs bedroom that Bursch shared with Syverson. Bursch is prohibited from possessing firearms due to prior felony convictions. Both firearms were leaning upright against the wall behind Bursch's bed. On the bed, officers discovered a letter addressed to Bursch from Polk County Social Services (PCSS). Officers also found a Bible containing Bursch's signature on a night stand next to the bed. A dresser at the foot of Bursch's bed contained medication prescribed to Bursch and his driver's license.

Officers also found two laptop computers in a closet near Bursch's bed. The laptops belonged to K.M.H. and K.A.H., and had been stolen from their Elk River home on August 31. Bursch and Syverson were at the Elk River home the night the laptops were stolen. Both men were present when K.M.H. and K.A.H.'s sister, J.H., went to bed around 1:00 a.m.; when she woke up the next morning they were gone and the laptops were missing.

2

Respondent State of Minnesota charged Bursch with possession of a firearm by a prohibited person and two counts of receiving stolen property. At trial, Bursch stipulated that he was prohibited from possessing a firearm and the district court instructed counsel not to elicit testimony about Bursch's past crimes. Bursch chose not to testify.

The three officers who conducted the search described the items they found and where they were located in Bursch's bedroom. Bursch's probation agent, Shannon Marks, testified that she was aware Bursch was living at the Crookston residence during the summer and early fall of 2013. Marks stated that Bursch was on probation at that time but she did not mention the nature of Bursch's prior convictions. The district court offered to provide a cautionary instruction regarding Bursch's probationary status, but Bursch's counsel declined this offer.

PCSS representative Katie Hann testified that in late July Bursch submitted a public assistance application to her office indicating that he had moved to the Crookston residence from Anoka County. Hann testified that the form listed the home in which the firearms and laptops were located as Bursch's current address. She also confirmed that her office sent the letter found on Bursch's bed during the search. The remaining witnesses included J.H. and her sisters, who testified regarding the stolen laptops, and Bursch's mother, who testified that Bursch was visiting her at the time of the search.

The jury found Bursch guilty of all charges. The district court sentenced Bursch to 60 months in prison for firearm possession and 19 months and 25 months for possessing the laptops, all to be served concurrently. The district court also ordered Bursch to pay prosecution costs, including $580.37 in hotel expenses incurred by J.H.,

3

K.M.H., K.A.H., Marks and Bursch's brother in connection with the trial. Bursch appeals.

## D E C I S I O N

**I.     The evidence was sufficient to prove Bursch constructively possessed the firearms and stolen property.**

When considering a sufficiency-of-the-evidence challenge, we view the evidence in the light most favorable to the conviction to determine whether it would permit a jury to reasonably conclude that the defendant was guilty of the offense. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). When a conviction is based on circumstantial evidence, we use a two-step process. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013).[1] First, we identify the circumstances proved, assuming that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. *Id.* at 598-99. Second, we independently examine the reasonableness of the inferences the jury could draw from those circumstances. *Id.* at 599. All circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010).

Because Bursch did not physically possess the firearms or stolen laptops at the time of the search, the state was required to show that he constructively possessed them. *State v. Porter*, 674 N.W.2d 424, 427 (Minn. App. 2004); *State v. Peterson*, 375 N.W.2d

---

[1]  We apply the heightened circumstantial-evidence standard of review because this case involves constructive possession of items found in a shared space, requiring the conscious exercise of dominion and control. *See State v. Salyers*, 858 N.W.2d 156 (Minn. 2015) (applying direct-evidence standard of review in case involving constructive possession of items within the defendant's exclusive control).

4

93, 95 (Minn. App. 1985). Where items are found in a shared space, the state must prove that there is a strong probability that the defendant consciously exercised dominion and control over the items seized. *State v. Wiley*, 366 N.W.2d 265, 270 (Minn. 1985); *State v. Florine,* 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975). Generally, evidence that contraband was discovered in a shared bedroom or residence in close proximity to defendant's personal belongings is sufficient to establish constructive possession. *See, e.g.*, *State v. Simon*, 275 N.W.2d 51, 52 (Minn. 1979) (defendant constructively possessed narcotics found, along with a passport, in his bedroom in a mobile home defendant jointly leased with a friend); *State v. Mollberg*, 310 Minn. 376, 390, 246 N.W.2d 463, 472 (1976) (defendant constructively possessed marijuana found in bedroom along with letters addressed to defendant and the front end of defendant's motorcycle); *State v. Denison*, 607 N.W.2d 796, 800 (Minn. App. 2000) (defendant constructively possessed marijuana found inside closet in home she shared with her husband), *review denied* (Minn. June 13, 2000).

The circumstances proved include the following: the Crookston house had been Bursch's primary residence since June 2013; Bursch shared the bedroom where the firearms and laptops were found; the firearms were found in plain view along the wall behind Bursch's bed in his portion of the bedroom; a variety of Bursch's belongings, including mail, a personal Bible, prescribed medication, and his driver's license were found in close proximity to the firearms; the stolen laptops were found in a closet on Bursch's side of the bedroom; and Bursch and Syverson were at J.H.'s house around the time the laptops went missing.

Bursch acknowledges that these circumstances are consistent with guilt but asserts they are equally consistent with the alternative hypothesis that either his brother or Syverson placed the items in his shared bedroom while he was away. Bursch notes that firearms were also found in his brother's room, which he argues supports the inference that the firearms in his bedroom also belonged to his brother. We disagree. It is not logical to conclude that Bursch's brother would keep two firearms behind Bursch's bed when he had his own bedroom in which he stored other firearms. It is also not rational to infer that the firearms belonged to Syverson based on their placement alongside the wall beside Bursch's bed in close proximity to many of Bursch's personal effects.

With respect to the laptops, J.H.'s testimony regarding Bursch and Syverson's presence at her house around the time they were stolen, combined with the eventual discovery of the laptops in their shared bedroom, overwhelmingly supports the hypothesis that Bursch knowingly possessed the stolen laptops. Considering that Bursch and Syverson were together at the time and place of the theft, and shared the bedroom and closet where the laptops were found, it is not rational to infer that Syverson alone knew the stolen laptops were in the shared closet. *See State v. Lozar*, 458 N.W.2d 434, 441 (Minn. App. 1990) (concluding there was "an overwhelming probability" defendant exercised dominion and control over marijuana seized from house and garage defendant jointly owned with husband), *review denied* (Minn. Sept. 28, 1990). And even if Bursch was not the one who placed the laptops in the closet, it is irrational to infer that he was not aware of and acquiesced to their presence. Accordingly, we conclude that the

circumstances proved are only consistent with a rational hypothesis of guilt and the evidence is sufficient to sustain Bursch's convictions.

## II. The district court did not plainly err in instructing the jury on constructive possession of a firearm.

Bursch challenges the following instruction:

> In determining whether or not the State has proven beyond a reasonable doubt that the defendant was in knowing possession of a firearm, you may consider such factors, including, but not limited to, whether the defendant was the owner or lessee of the premises in which the firearm was found; whether the defendant had exclusive control over the area within the premises where the firearm was found; the defendant's proximity to the firearm at the time it was found; the number of other people, if any, present at the time the firearm was found; the defendant's relationship or association with any other people present at the time the firearm was found; and the defendant's conduct at the time the firearm was found.

Bursch did not object to this instruction, but now contends it was improper for the district court to provide the jury with a list of factors from which it could infer possession.

A defendant's failure to object to jury instructions generally waives the right to challenge them on appeal unless the instructions contain plain error affecting the defendant's substantial rights. *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998). In applying the plain-error test, we will reverse only if the district court (1) committed an error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011).

7

Here, we discern no error, plain or otherwise. In *State v. Olson*, our supreme court endorsed a multi-factor constructive possession instruction that was almost identical to the one given here. 482 N.W.2d 212, 216 n.3 (Minn. 1992). The supreme court reversed Olson's conviction because the district court improperly instructed the jurors that they could infer possession of a controlled substance based on proximity alone. The supreme court concluded that such an instruction is erroneous because it "single[s] out and unfairly emphasize[s] one factor, one piece of the circumstantial evidence" bearing on the jury's determination of possession. *Id.* at 216. While the supreme court also emphasized that district courts should "avoid as much as possible the giving of instructions on particular kinds of evidence, especially inferences," it noted that if such instructions were given they should be "balanced" and address "various relevant factors." *Id.*

The instruction here complied with this directive. It lists six factors that the jury could consider, as opposed to instructing the jury that it may infer possession from one or two specific factors. Moreover, the only difference between the supreme court's suggested instruction in *Olson* and the one given in this case, is that the district court took the additional protective measure of informing the jury that the factors it could consider were "not limited" to those listed in the instruction. *See State v. Hollins*, 765 N.W.2d 125, 130-31 (Minn. App. 2009) (concluding permissive inference instruction that was "nearly identical to language found in a number of Minnesota Supreme Court cases" was not erroneous). Accordingly, the district court did not err in instructing the jury.

**III.  Testimony about Bursch's probation status and his application for public assistance was not overly prejudicial.**

Evidence of a defendant's prior crimes or bad acts is not admissible to prove the defendant's character for purposes of showing that he acted in conformity with that character.  Minn. R. Evid. 404(b); *see also State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965).  And even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  Minn. R. Evid. 403.  Because Bursch did not object to the challenged testimony, we review its admission for plain error.  *See State v. Vick*, 632 N.W.2d 676, 685 (Minn. 2001).  Bursch bears the "heavy burden" of showing that any claimed "error was prejudicial and affected the outcome of the case."  *Id.*

Bursch first argues that the district court plainly erred by permitting Marks to testify regarding his probation status.  He contends that Marks's testimony violated the district court's pretrial order allowing him to stipulate to his prior convictions, and that Marks's testimony was unfairly prejudicial.  We disagree.

Marks testified that Bursch had been on probation since January 2013, was prohibited from owning a firearm, and was required to notify her of address changes.  She did not identify his underlying offenses.  And Marks's references to Bursch undergoing "testing" and meeting him at a probation hearing constituted only a few isolated remarks in a trial where there was strong evidence linking Bursch to the firearms and stolen laptops.  Moreover, Bursch declined the district court's offer to provide a cautionary instruction directing the jury to only consider Marks's testimony for the

9

limited purpose of showing that Bursch lived at the Crookston house. When this record is considered as a whole, we conclude that any prejudice resulting from Marks's testimony did not affect Bursch's substantial rights.

Likewise, we conclude that Hann's testimony that Bursch applied for assistance from her office, which provides "food support, cash, and health care programs for adults," did not affect Bursch's substantial rights. Hann's reference to Bursch's application was brief, and provided necessary foundation for her knowledge of Bursch's address. The state did not focus on Bursch's application for public assistance in subsequent questioning or in closing argument. The limited extent of this testimony demonstrates it likely had little impact on the jury's determination in a case where the evidence of guilt was strong.

**IV.    The district court did not abuse its discretion by imposing multiple sentences.**

Generally, a district court may not impose more than one sentence when a defendant commits multiple offenses as part of a single behavioral incident. *See* Minn. Stat. § 609.035, subd. 1 (2014) (providing if defendant's conduct constitutes more than one offense, he may be punished for only one of the offenses). We review a district court's sentence for an abuse of discretion. *State v. Franklin*, 604 N.W.2d 79, 82 (Minn. 2000).[2]

---

[2]   Bursch's failure to raise this issue in the district court does not prevent him from raising it on appeal. *State v. Mendoza*, 297 N.W.2d 286, 288 (Minn. 1980) (stating that appellant does not forfeit the issue of multiple sentencing under Minn. Stat. § 609.035 by failing to raise the issue in the trial court).

10

The district court imposed separate, concurrent sentences on the three conviction offenses. Bursch contends that multiple sentences are not permitted because the state failed to show that the three possessory crimes arose from separate behavioral incidents. We disagree.

First, it is clear that the firearm-possession offense and the two receiving-stolen-property offenses did not arise from the same behavioral incident. The firearms and laptops are distinct objects with no connection to each other besides the fact that they were all found in Bursch's bedroom. Even if these possessory crimes arose from the same behavioral incident, Minn. Stat. § 609.035, subd. 3 (2014), expressly permits separate sentences in cases involving ineligible-firearm-possession convictions.

Second, imposing separate sentences for each possession-of-stolen-property conviction is permissible under the multiple-victim exception to Minn. Stat. § 609.035. A district court may impose multiple sentences for convictions arising out of a single behavioral incident if (1) the offenses involve multiple victims and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct. *State v. Marquardt*, 294 N.W.2d 849, 850-51 (Minn. 1980). This exception applies to property crimes. *State v. Lundberg*, 575 N.W.2d 589, 592-93 (Minn. App. 1998), *review denied* (Minn. May 20, 1998). And while the laptops were stolen from the same house, K.M.H. and K.A.H. testified that they each owned their respective laptop and kept them in separate bedrooms. This separate ownership establishes that there were two victims, which allowed the district court to impose multiple sentences.

11

Finally, imposing multiple sentences does not unfairly exaggerate the criminality of Bursch's conduct. We look to the imposition of sentences in other cases when determining whether sentencing exaggerates the criminality of conduct. *State v. Cole*, 542 N.W.2d 43, 53 (Minn. 1996). In *State v. Lundberg*, this court affirmed the imposition of multiple sentences where the defendant stole money belonging to two different parties that was stored separately at the same location. 575 N.W.2d at 592-93. These circumstances are analogous to this case. We also note that Bursch received concurrent, not consecutive sentences, which would further mitigate any prejudice caused by multiple sentences. On this record, we conclude that the district court did not abuse its discretion by imposing three sentences.

## V. The district court erred by awarding witness travel expenses as prosecution costs.

Minn. Stat. § 631.48 (2014) permits the sentencing court to order a defendant to "pay the whole or any part of the disbursements of the prosecution." This payment may be in addition to any other penalty authorized by law. *Id.* But travel-related expenses incurred by lay witnesses may not be awarded as costs of prosecution. *See State v. Lopez-Solis*, 589 N.W.2d 290, 296 (Minn. 1999). The state concedes that the district court erred by requiring Bursch to pay hotel expenses incurred by lay witnesses as prosecution costs, but argues that Bursch cannot raise this issue on appeal because he failed to object at sentencing.

While a defendant cannot waive the right to appeal a sentence, *State v. Anyanwu,* 681 N.W.2d 411, 413 (Minn. App. 2004), he can forfeit the right to challenge fines and

12

fees imposed as part of a sentence by not objecting in the district court. *Blondheim v. State*, 573 N.W.2d 368, 368-69 (Minn. 1998). But we retain the discretion to consider an issue where the interests of justice so require, and doing so would not unfairly surprise the opposing party. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). That is the situation here. The interests of justice would not be well served if we permit these costs to stand when the state concedes that they were awarded in error. The record reflects that Bursch has limited financial resources; $580.37 is likely not an insignificant amount of money for him. Finally, any concerns about unfair surprise to the state are outweighed by the fact that the fees the state requested, and the district court granted, are clearly not permitted. Accordingly, we reverse the $580.37 in costs assessed to Bursch.

**Affirmed in part and reversed in part.**